1  **H1 LAW GROUP**
   ERIC D. HONE
2  Nevada Bar No. 8499
   eric@h1lawgroup.com
3  JAMIE L. ZIMMERMAN
   Nevada Bar No. 11749
4  jamie@h1lawgroup.com
   701 N. Green Valley Parkway, Suite 200
5  Henderson NV 89074
   Phone  702-608-3720
6  Fax    702-608-3759

7  *Attorneys for Defendants*

8
                    UNITED STATES DISTRICT COURT
9
                         DISTRICT OF NEVADA
10

11  INTERNATIONAL MARKETS LIVE, INC., a     CASE NO.  2:18-cv-01591-APG-PAL
    New York corporation dba iMarketslive,

12                          Plaintiff,       **DEFENDANTS' REPLY IN SUPPORT OF COUNTERMOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 17]**
13          v.

14  BLUE CAPITAL FX, LLC, an Arizona limited
    liability case; KEN IBIZUGBE, an individual;
15  HEATHER LOPEZ, an individual; NATE
    BARNES, an individual,

16                          Defendants.

17

18      Defendants Blue Capital FX, LLC, Ken Ibizugbe, Heather Lopez, and Nate Barnes

19  (collectively, the "Blue Capital Group"), by and through the undersigned counsel, hereby submit

20  this reply in support of their countermotion to dismiss Plaintiff International Markets Live, Inc.'s

21  ("IML") amended complaint pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal

22  Rules of Civil Procedure [ECF No. 17].

23      Blue Capital Group's reply brief is based upon the following Memorandum of Points and

24  Authorities and supporting exhibits, including the declaration of Jamie L. Zimmerman, attached

25  hereto as Exhibit 1; the papers and pleadings on file herein; and any argument of counsel that

26  may be permitted at the hearing of this matter set for October 24, 2018.

27  / / /

28  / / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

IML's Opposition to the Blue Capital Group's Countermotion to Dismiss[1] only further demonstrates the futility of this action and of the appropriateness of attorneys' fees sanctions to redress IML's improper conduct.

First, IML has failed to put forth any basis upon which the Court could ever exercise personal jurisdiction over the Blue Capital Group. IML conceded that the Blue Capital Group was not subject to general jurisdiction and it failed to carry its burden to establish specific personal jurisdiction. Indeed, the testimony of the individual defendants submitted with the countermotion to dismiss remains unrefuted. The few alleged "facts" that IML contends supports jurisdiction are nothing more than false, unsubstantiated allegations that, even if taken as true, bear no connection to Nevada to support jurisdiction.

Second, given that the Court lacks personal jurisdiction over the Blue Capital Group, none of the defendants reside in Nevada, and none of the complained of conduct occurred in Nevada, IML has failed to establish that venue is appropriate in this District. Indeed, with none of the parties located in Nevada, it is not simply the incorrect venue, but an incredibly inconvenient one.

Moreover, despite an unambiguous provision in its own contract mandating that all disputes be resolved through binding arbitration in New York, IML has asserted its contractual claims in Nevada federal court, even though none of the defendants reside in Nevada and none of the alleged wrongful conduct occurred here. What is worse, IML has failed to even respond to the Blue Capital Group's central argument that the case should be dismissed as a result of this mandatory arbitration provision. This alone requires dismissal of suit and attorneys' fees sanctions.

---

[1] IML's filing was styled as a "Reply to Motion for Preliminary Injunction and Opposition to Countermotion to Dismiss Plaintiff's Amended Complaint." (*See* ECF No. 24.) However, the Court made clear at the September 27, 2018 hearing, that it would first decide the jurisdictional arguments contained in the Blue Capital Group's Countermotion to Dismiss before entertaining IML's request for a preliminary injunction. (*See* ECF No. 21.) Accordingly, this Reply will be limited to the issues set forth in the Blue Capital Group's Countermotion to Dismiss, ECF No. 17, at 21-30.

Finally, a review of this District's docket reveals that IML has engaged in a campaign of filing lawsuits in Nevada against non-resident defendants with little or no contacts to this state, a pattern and practice that reveals IML's gamesmanship and further supports an award of fees.

Therefore, for the reasons stated herein, the Blue Capital Group respectfully requests that this Court:

i. grant the Blue Capital Group's countermotion to dismiss IML's amended complaint for failure to state a claim, lack of personal jurisdiction, and improper venue pursuant to FRCP 12(b)(6), (b)(2), and (b)(3), respectively; and

ii. award the Blue Capital Group their reasonable attorneys' fees incurred herein, the description and amount of which the Blue Capital Group will prove up in a supplemental filing consistent with Local Rule 54-14.

## II. LEGAL ARGUMENT

### A. IML's Amended Complaint Is Subject to Dismissal Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6)

IML's Amended Complaint must be dismissed because the Court lacks personal jurisdiction over the Blue Capital Group, venue is not proper, and IML's claims are subject to mandatory arbitration.

#### 1. IML's Amended Complaint Should Be Dismissed for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2)

##### a. IML Concedes That General Personal Jurisdiction Does Not Apply in This Case

Quite the departure from its other untenable positions, IML does take one sensible (and legally correct) position in its opposition papers—acknowledging that this Court does *not* have general jurisdiction over the Blue Capital Group. (*See* Opposition, ECF No. 24 at 10:14-15.)

##### b. IML Failed to Carry Its Burden to Prove That This Court Can Exercise Specific Personal Jurisdiction over the Blue Capital Group

The parties agree that the burden of proof falls to IML, as the plaintiff, to establish that jurisdiction is proper over the Blue Capital Group. (ECF No. 17 at 24:2-10; ECF No. 24 at

3

10:21-23.)  IML's recognition of this point is critical because it has come nowhere near close to satisfying its burden of proof.  Importantly, a plaintiff cannot simply rely upon "bare allegations" to survive a motion to dismiss for lack of personal jurisdiction; rather, the plaintiff must make "a *prima facie* showing of jurisdictional facts."  See *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

To be clear, while IML may cite to ten exhibits in its opposition papers, these exhibits in no way substantiate the bold assertions of fact regarding jurisdiction in IML's briefing.  Thus, these purported "facts" remain nothing more than false, unsubstantiated allegations—a far cry from IML's burden of proof to establish personal jurisdiction.

And more importantly, as detailed in the chart below, IML has failed to prove the requisite connection to Nevada to support its jurisdictional allegations:

| IML's Purported "Fact" | Lack of Connection to Nevada |
|---|---|
| "Defendants intentionally and specifically targeted IML's reps and IBO's." (ECF No. 24 at 13:10, 14:7-8.) | IML does not allege any connection to Nevada. |
| "Defendants have duplicitously lead [sic] away hundreds of Plaintiff's reps a portion of which were Nevada reps." (*Id.* at 13:13-14.)<br><br>"Defendants have duplicitously lead [sic] away over 1,000 of Plaintiff's reps a portion of which were Nevada reps." (*Id.* at 14:13-15.) | IML has notably failed to offer any evidence concerning the ambiguous "portion" of "Nevada reps" it claims have allegedly left IML to join Blue Capital.<br><br>IML does not identify even a single Nevada customer impacted, let alone hundreds or thousands to support this serious allegation.  Thus, IML's contention is wholly unsubstantiated and cannot support an exercise of jurisdiction in Nevada.<br><br>Tellingly, all three declarations IML submitted—those of Jason Brown (Ex. 1), Alysha Bush (Ex. 2), and Jaime Talavera (Ex. 3)—are devoid of any actual testimony related to conduct or customers in Nevada. |
| "Defendants came to a convention in Nevada wherein Defendants intentionally made false representations to Nevada reps in attempts to poach said reps." (*Id.* at 13:14-16.) | These allegations are completely unsubstantiated.<br><br>As an initial matter, IML has offered no evidence that Nate Barnes, Heather Lopez or any person on behalf of Blue Capital attended any convention in Nevada.  Their declarations to the effect that they have not traveled to Nevada during the relevant time period remain uncontroverted. |

| IML's Purported "Fact" | Lack of Connection to Nevada |
|---|---|
| "Defendant Ibizugbe came to a convention in Nevada wherein he promoted himself and intentionally made false representations to Nevada reps in attempts to poach said reps." (*Id.* at 14:8-10.)<br><br>"In appearing at a convention in Nevada, it is obvious that by make [sic] false statements designed to seduce Plaintiff's Nevada rep/IBO's to join Blue Capital. [sic] Defendants either knew or should have known that such attempts to win over said reps would result in harm to Plaintiff located in Nevada." (*Id.* at 14:19-23.) | With respect to Ken Ibizugbe, he testified in his declaration: "With the exception of attending a single conference in Nevada in March of this year, I did not travel to Nevada or otherwise conduct any business in Nevada during the relevant time period." (ECF No. 16-2 at ¶ 34.)<br><br>IML's reliance on Exhibit 10 does not rebut Mr. Ibizugbe's testimony. First, Exhibit 10 is not authenticated and, therefore, is inadmissible.<br><br>The first two pages of Exhibit 10, purportedly containing Facebook posts and photographs of Mr. Ibizugbe in Las Vegas *promoting an IML conference*, are consistent with Mr. Ibizugbe's testimony and in no way evidence him making "false representations" to Nevada customers or "attempt[ing] to poach" or "seduce" Nevada customers into leaving IML to join Blue Capital.<br><br>As for the last two pages of Exhibit 10, it is unclear (i) who sent and received these unauthenticated text messages, and (i) when these messages were purportedly sent. Without this necessary information, these text messages are devoid of any evidentiary value. In any event, these text messages do not purport to evidence any solicitation of IML customers. |
| "Defendants, though their web presence and telegram application, have intentionally targeted and solicited Plaintiff's reps/IBO's located in Nevada." (*Id.* at 13:17-19; 14:14-16.) | Again, IML has failed to identify even a single Nevada customer impacted. |

In sum, IML has failed to offer even a single shred of evidence of forum-related activity in Nevada. As such, the testimony of the individual defendants remains unrefuted—with the exception of a single defendant attending a single conference in Nevada, *all activities occurred in Arizona*. Jurisdiction simply cannot lie on such hollow ground.

### 2. IML's Amended Complaint Should Be Dismissed for Improper Venue Pursuant to FRCP 12(b)(3)

Should this matter exist at all in any federal court, Nevada is not the correct venue for any such action.

IML argues that it has made a satisfactory showing of personal jurisdiction over the Blue Capital Group, and therefore, venue is appropriate here. (ECF No. 24, at 15: "As set forth above, personal jurisdiction is justified against Defendants and thus the Nevada federal district court has [sic] can assert jurisdiction over Defendants and thus venue is proper for the claims."). However, as set forth above, IML has failed to establish the Court's personal jurisdiction over any of the defendants, and accordingly, venue in this District cannot be maintained.

The single additional fact that IML proffers to support its choice of venue is that "[t]he CEO of IML is a resident of Las Vegas, and he runs much of IML's operations from the state of Nevada." (ECF No. 24, at 15.) Of course, IML fails to set forth the identity of its CEO (who is not a party to this suit) and fails to explain how or why this fact should somehow outweigh that the Court lacks personal jurisdiction over the Blue Capital Group, none of the defendants reside here, and none of the complained conduct occurred in Nevada. What is more, IML's assertion that many of its business operations are conducted in Nevada is highly problematic given that <u>IML is not even registered to do business in Nevada</u>.[2]

In sum, IML has failed to establish that venue is appropriate here and the Court should therefore dismiss IML's claims.

### 3. IML's Amended Complaint Fails to State a Claim Because IML's Claims Are Subject to Mandatory Arbitration under the Federal Arbitration Act

IML failed to address or even respond to the unambiguous provision in its own Policies and Procedures Requiring Mandatory Arbitration for All disputes.

The first ground upon which the Blue Capital Group sought dismissal of IML's Amended Complaint is that IML's own "Policies and Procedures" (the same contract under which IML has

---

[2] *See* Nevada Secretary of State Business Entity Lookup for International Markets Live, Inc., attached as **Exhibit 1-A**. Pursuant to NRS § 80.055(2), a corporation that fails to register as a foreign corporation with the Nevada Secretary of State "may not commence or maintain any action or proceeding in any court of this State." NRS § 80.055(2). "A court must stay an unqualified foreign corporation's action until the foreign corporation qualifies." *Bermuda Road Properties, LLC v. Ecological Steel Systems, Inc.*, Case No. 2:12-cv-1579-RCJ-VCF, 2013 WL 1338307, *7 (D. Nev. Apr. 1, 2013) (citing *Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 876 (Nev. 2002)). Thus, IML's failure to register as a foreign corporation with Nevada's Secretary of State is arguably fatal to its suit as well. *See Bermuda Road Properties, LLC.*, 2013 WL 1338307, at *7 (D. Nev. Apr. 1, 2013).

asserted its claims in this action),[3] contains a binding arbitration provision requiring that all disputes between IML and its customers be "exclusively resolved pursuant to binding arbitration under the Commercial Rules of the American Arbitration Association with arbitration to occur at New York NY United States." (ECF No. 17, at 23) (*quoting* ECF No. 7-2, IML Policies and Procedures, at Section 11.11).

Despite the Blue Capital Group asserting mandatory arbitration as grounds for dismissal, IML utterly failed to acknowledge this argument, or in any way respond to it. Pursuant to this Court's local rules, a party's failure to acknowledge or address a legal argument in response to a motion constitutes a concession to the granting of the motion. *Springer v. U.S. Bank Nat'l Assoc.*, No. 215CV02471-APG (PAL), 2016 WL 5661929, at *2 (D. Nev. Sept. 29, 2016) ("Under Local Rule 7-2(d), a party's failure to respond serves as consent to granting the motion.").[4]

Undoubtedly, IML is aware of the forum selection clause in its own contract,[5] and filed this lawsuit in direct contravention of its own Policies and Procedures simply to harass and attempt to intimidate the Blue Capital Group into ceasing their legitimate business operations. IML's failure to even address the mandatory arbitration provision is hardly surprising given its litigation tactics in this lawsuit, and in other lawsuits recently filed in this District.

In fact, it appears that IML has a pattern and practice of ignoring its own mandatory arbitration provision and has recently filed multiple lawsuits in Nevada, despite the fact that IML is not even registered to do business in this state. IML has filed four separate actions in this District in 2018 alone. Each of these actions appears to have been filed without basis or jurisdiction. For example, IML recently filed suit in Nevada against a wheelchair-bound dissatisfied IML customer from Florida for posting his negative opinions regarding IML on

---

[3] *See* ECF No. 6, Plaintiff's First Am. Compl. at ¶¶ 12-14; 19-20; 31-36.

[4] Specifically, Local Rule 7-2(d) provides, in part: "The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."

[5] Indeed, it appears that the Policies and Procedures that IML contends the individual defendants breached, and which contains a mandatory arbitration provision, remain the current version on IML's website. http://www.myimarketslive.co/en-US-38605/ (last visited Oct. 16, 2018), attached as **Exhibit 1-B.**

Facebook, even though IML was unable to identify any contacts the customer had with Nevada. (*See International Markets Live, Inc. v. Halterman, et al.*, Case No. 2:18-cv-00187-JAD-GWF, ECF No. 26 at 1-2 (D. Nev. June 28, 2018)).  IML has sued more than ten critics and dissatisfied customers in the District of Nevada despite none of the defendants being residents of Nevada. (*See* Case No. 2:18-cv-00187-JAD-GWF, filed May 24, 2018 by IML against Scott Carney (a Florida resident) and Ethan Vanderbuilt (a California resident); Case No. 2:18-cv-01597-JCM-GWF, filed August 24, 2018 by IML against Christian Baptiste (a New Jersey resident); Case No. 2:18-cv-01112-KJD-PAL filed June 22, 2018 by IML against Joel Santiago (a Wisconsin resident), Joe Otis (a Georgia resident), Muhammad Zidan and Mack Mills (Florida residents), Gregory Perdriel (a Florida resident), Carlos Santiago (a Florida resident), and Robbie Issa (a New York resident)).

      Although the Court has the discretion to stay or dismiss the case on the basis that all the claims are arbitrable, courts within the Ninth Circuit acknowledge that dismissal of the action may be preferable where all asserted claims are subject to arbitration.  *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256 NC, 2014 WL 1615177, at *11 (N.D. Cal. Apr. 21, 2014); *Anderson Plant, LLC v. Batzer Const., Inc.,* No. 13–CV–02109, 2014 WL 800293, at *5 (E.D. Cal. Feb. 27, 2014) ("No efficiencies would be achieved if this case were to remain on the docket . . . . [and] even if the parties seek confirmation of the award, [a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy . . . .") (internal quotation marks omitted); *see also DeMartini v. Johns,* No. 12-cv-03929 JCS, 2012 WL 4808448, at *6 (N.D. Cal. Oct. 9, 2012) (dismissing case where all claims were subject to arbitration); *Lewis v. UBS Fin. Servs. Inc.,* 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (same).

      IML has failed to demonstrate (or even suggest) how any of its claims could be excluded from mandatory arbitration and accordingly, the Court should dismiss IML's Amended Complaint in its entirety.

/ / /

/ / /

### B. The Blue Capital Group Is Entitled to Their Attorneys' Fees for Having to Litigate This Frivolously-Filed Action

IML likewise failed to respond to the Blue Capital Group's request for attorneys' fees, implicitly acknowledging its wrongful conduct.

An award of attorneys' fees is warranted under the federal common law standard as well as under NRS § 18.010, and therefore, it does not matter whether any sanction in this case is deemed "procedural" or "substantive." *See In re Larry's Apartment, LLC*, 249 F.3d 832, 837-38 (9th Cir. 2001) (explaining that attorney fee sanctions issued by federal courts sitting in diversity are governed by state law where the sanctions pertain to the substance of the case, and are governed by federal common law where the sanctions address misconduct in the litigation itself). The Blue Capital Group is entitled to their attorneys' fees under either standard because IML has refused to submit to arbitration without justification and in bad faith.

#### 1. IML Has Refused to Submit This Dispute to Arbitration without Justification and in Bad Faith

Federal courts hold that "an award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration . . . ." *United Food & Commercial Workers Union, Locals 197 v. Alpha Beta Co.,* 736 F.2d 1371, 1383 (9th Cir. 1984). In fact, because of "federal policy favoring arbitration," the Ninth Circuit has applied "a less demanding—'without justification'—standard in cases involving refusals to arbitrate." *Fed'n of Agents & Int'l Representatives v. United Food & Commercial Workers Union, Local 101*, 8 F. App'x 737, 740 (9th Cir. 2001) (citing *United Food & Commercial Workers Union v. Alpha Beta Co.,* 736 F.2d 1371, 1382-83 (9th Cir. 1984)).

Courts within the Ninth Circuit find awards of attorneys' fees warranted where a party asserts "defenses that indicate a bad faith intent to delay arbitration" or uses litigation as a "tactic" without legal basis. *See, e.g.*, *Int'l Union of Painters Allied Trades Dist. Council Local No. 15 v. Diversified Flooring Specialist, Inc.*, No. 206-CV-0358- RLH-PAL, 2007 WL 923936, at *6 (D. Nev. Mar. 23, 2007); *Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Cosco Fire Prot., Inc.*, 363 F. Supp. 2d 1220, 1226 (C.D. Cal. 2005); *see also Sandstone*

*Marketing, Inc. v. Precision Converters, Inc.*, Case No. CV-12-01176-PHX-FJM, WL 2012 WL 6217539, *2 (D. Ariz. Dec. 13, 2012) (awarding attorneys' fees pursuant to Arizona statute where plaintiff filed suit in contravention of mandatory arbitration and noting that an award of attorneys' fees would "discourage parties from ignoring arbitration provisions.").

Courts have also held that a bad faith refusal to arbitrate can be shown, and can justify the sanction of attorneys' fees, where an arbitration provision is clear and the party refusing to arbitrate fails to submit *any* legal arguments as to why the unambiguous arbitration provision should not apply. *See Int'l Longshoremen's and Warehousemen's Union, Local 6 v. Cutter Labs.*, 552 F. Supp. 979, 981-82 (N.D. Cal. 1982). Indeed, the failure to submit any substantive arguments as to why an arbitration provision should not apply subjects litigants to "unnecessary expense." *Id.*

Here, IML has failed to even respond to the Blue Capital Group's argument that mandatory arbitration prevents this suit from proceeding in this forum. Instead, IML has attempted to distract the Court from this insurmountable deficiency in its filing by proffering irrelevant social media conversations and images that have no bearing on the primary issues to be determined by this Court, namely, the ability of the Court to issue a determination in the absence of jurisdiction. IML's failure to submit *any* legal arguments as to why the unambiguous arbitration should not apply subjects the litigants to unnecessary expense, and wastes judicial time and resources.[6]

**2. Nevada Law Demands an Award of Attorneys' Fees Because IML Has Brought and Maintained This Action without Any Justification in Fact or Law**

Likewise, NRS § 18.010(2)(b) permits an award of attorneys' fees when a claim "was brought *or maintained* without reasonable ground or to harass. . . ." NRS § 18.010(2)(b)

---

[6] Although IML might have argued that the mandatory arbitration provision contains a carve-out provision allowing it to request injunctive relief from a judicial forum, IML failed to make this argument. Presumably, IML did not make this argument out of recognition that IML's injunctive relief request was wholly deficient, and that the Amended Complaint requests relief far beyond injunctive remedies and requests in "excess of one million dollars" for contractual and tort-based damages, among other relief sought. (*See* ECF No. 6, Plaintiff's First Am. Compl. at ¶¶ 35, 43, 50, 57, 64, 71.)

(emphasis added).  This section is to be liberally construed to "punish . . . and deter frivolous or vexatious claims."  *Id.*  Under NRS § 18.010(2)(b), a claim is frivolous if it is not well-grounded in fact or supported by existing law.  *Simonian v. Univ. & Cmty. Coll. Sys.*, 122 Nev. 187, 196, 128 P.3d 1057, 1063-65 (2006).

Thus, even if IML could have initially asserted that its failure to comply with the mandatory arbitration provision in its contract was a good faith oversight, IML's maintenance of this lawsuit now, after being put on notice of the mandatory arbitration provision through the instant briefing, reveals that IML is acting in bad faith and attempting to needlessly drive up expenses for the Blue Capital Group.

IML's failure to address the mandatory arbitration provision demonstrates that IML's decision not to comply with this provision in its own contract, and the contract under which it has brought suit, was not only "without justification," but was in fact purposeful, and intended to force the Blue Capital Group into an inconvenient forum they never consented to (and which lacks jurisdiction over them) in the hopes that IML could secure an *ex parte* TRO with minimal opportunity for notice to the Blue Capital Group.  This is further bolstered by the recent litany of complaints IML has filed in Nevada against non-resident defendants who are presumably subject to the same mandatory arbitration provision that appears in IML's standard policies and procedures.  This is precisely the type of oppressive and underhanded litigation conduct that courts have the inherent power to dissuade through attorneys' fees awards, in addition to Nevada's statutory requirement under NRS § 18.010 that sanctions issue to redress such conduct.

For these reasons, the Blue Capital Group respectfully requests the Court grant their request for attorneys' fees for having to litigate this frivolously-filed action.  In the event the Court is amenable to a fee award, the Blue Capital Group will submit supplemental briefing containing all information required under Local Rule 54-14, including a reasonable itemization and description of work performed.

/ / /

/ / /

/ / /

## III. CONCLUSION

Based on the foregoing, the Blue Capital Group respectfully requests that this Court:

i. grant the Blue Capital Group's countermotion to dismiss IML's amended complaint for failure to state a claim, lack of personal jurisdiction, and improper venue pursuant to FRCP 12(b)(6), (b)(2), and (b)(3), respectively; and

ii. award the Blue Capital Group their reasonable attorneys' fees incurred herein, the description and amount of which the Blue Capital Group will prove up in a supplemental filing consistent with Local Rule 54-14.

DATED this 17th day of October 2018.

H1 LAW GROUP

Eric D. Hone, Nevada Bar No. 8499
eric@h1lawgroup.com
Jamie L. Zimmerman, Nevada Bar No. 11749
jamie@h1lawgroup.com
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned, an employee of H1 Law Group hereby certifies that service of the foregoing document was served on the 17th day of October via the Court's CM/ECF filing system addressed to all parties on the e-service list.

Bobbye Donaldson, an employee of
H1 Law Group