# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| International Markets Live Incorporated, | No. CV-18-03476-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| Blue Capital FX LLC, et al., | |
| Defendants. | |

Before the Court are Plaintiff International Markets Live, Inc.'s ("IML") Emergency Motion for an Ex Parte Temporary Restraining Order and Preliminary Injunction (Doc. 7); Defendants Blue Capital FX, LLC, Ken Ibizugbe, Heather Lopez, and Nate Barnes's (collectively, "Defendants") Opposition to Plaintiff's Emergency Motion for an Ex Parte Temporary Restraining Order and Preliminary Injunction and Countermotion to Dismiss Plaintiff's Amended Complaint (Doc. 17); and IML's Motion for Preliminary Injunction and Request for Accelerated Pretrial Conference (Doc. 39).

Because the claims against Ken Ibizugbe, Heather Lopez, and Nate Barnes are subject to arbitration, the Court will grant in part Defendants' Countermotion to Dismiss (Doc. 17) and deny as moot IML's two pending motions for injunctive relief (Docs. 7, 39).

**I.   BACKGROUND**

IML provides customers with educational tools and information to trade foreign and crypto currencies. (Doc. 2 at 2.) Its products are distributed under a direct sales, or network marketing, model and are offered to individuals on a subscription basis. (Id.) IML contracts

with "independent business owners" ("IBOs") in an independent contractor relationship to effectuate the direct sales model of its products and services. (Id.) These contracts are called IBO Agreements. (Id.) According to IML, all IBOs must enter an IBO Agreement to become an IBO, and the agreement requires IBOs to agree to IML's "Policies and Procedures." (Id.)

IML understands their Policies and Procedures to require IBOs to: (1) not directly or indirectly recruit other IBOs or customers for other network marketing businesses; (2) not participate as a distributor in a competing network marketing business; (3) not sell, or attempt to sell, any competing products to IML's IBOs or customers; and (4) not disclose or use for non-company activities any confidential information obtained from IML, such as "genealogical and Downline reports, customer lists, customer information developed by [IML] . . . , Independent Affiliate lists, manufacturer and supplier information, business reports, commission or dales reports and such other financial and business information which [IML] may designate as confidential." (Id. at 3.)

IML's Policies and Procedures also includes an arbitration provision, which provides, in relevant part:

> In the event a dispute arises between [IML] and an [IBO] regarding their respective rights, duties under this agreement, or in the event of a claim of breach of the [IBO] Agreement, it is agreed that such dispute shall be exclusively resolved pursuant to binding arbitration under the Commercial Rules of the American Arbitration Association with arbitration to occur at New York NY [sic] United States. . . . This provision shall not be construed so as to prohibit either party from obtaining preliminary or permanent injunctive relief in any court of competent jurisdiction.

(Doc. 40-1 at 16.)

According to IML, in 2017 and 2018 Defendants Ken Ibizugbe, Heather Lopez, and Nate Barnes (collectively, the "Individual Defendants") each entered into IBO Agreements with IML, agreeing to abide by IML's Policies and Procedures. (Doc. 2 at 3.) The

Individual Defendants then violated IML's Policies and Procedures by leaving IML and starting Blue Capital FX, LLC ("BCFX"), a competitor to IML in the field of foreign and crypto currency trading education. (Id. at 4.) According to IML, the Individual Defendants also wrongfully "bribed, solicited, recruited, and enticed" IML's IBOs and customers to move to BCFX; defamed IML; and stole confidential information and trade secrets. (Id.)

On August 23, 2018, IML filed suit against Defendants in the United States District Court for the District of Nevada on the basis of diversity jurisdiction, bringing claims for breach of contract, misappropriation of trade secrets, defamation, tortious interference with contractual relationships and prospective economic advantage, and conspiracy. (Id. at 5-9.) On August 31, IML filed its Emergency Motion for an Ex Parte Temporary Restraining Order and Preliminary Injunction. (Doc. 7.) IML asked the district court to enjoin Defendants from (1) using IML's confidential information and trade secrets, and (2) soliciting IML IBO's and traders to move to BCFX. (Id. at 12.) The district court denied the request for an ex parte temporary restraining order and ordered IML to serve Defendants. (Doc. 9.) Defendants appeared and filed a joint response to the motion for injunctive relief and countermotion to dismiss the suit. (Docs. 16, 17.) In the countermotion to dismiss, Defendants argued IML's case should be dismissed because (1) the Policies and Procedures upon which IML's claims rely includes a binding arbitration provision; (2) the district court did not have personal jurisdiction over Defendants, who are residents of Arizona; and (3) Nevada was the improper venue for IML's claims. (Doc. 17 at 3-4.) Defendants also requested attorneys' fees, arguing IML's action was frivolous. (Id. at 28-29.)

Both the motion for injunctive relief and countermotion to dismiss were fully briefed. (Docs. 17, 24, 26-28.). On October 24, 2018, the Nevada district court held a hearing on the pending motions. (Doc. 29.) The court concluded Nevada was not the proper venue and transferred the case to the District of Arizona under 28 U.S.C. § 1406(a), thus resolving Defendants' second and third grounds for dismissal. (Id.) The court did not address IML's pending motion for injunctive relief, nor did it address Defendants' motion

to dismiss on the basis of the arbitration clause. Those motions remain pending before this Court.

IML did not address Defendants' arguments regarding arbitration or attorneys' fees in any of its briefing before the Nevada district court. Therefore, on December 20, 2018, this Court, now with jurisdiction over the matter, ordered IML to file supplemental briefing addressing Defendants' arbitration argument and request for attorneys' fees. (Doc. 38.) On December 28, 2018, several days before the supplemental briefing was due, IML filed a second motion for preliminary injunction. (Doc. 39.) IML did not acknowledge that its previous motion for injunctive relief remained pending before the Court. The motions are largely identical in form and substance.

Then, on January 3, 2019, IML filed the supplemental brief ordered by the Court. (Doc. 40.) In the brief, IML does not contest that the subject matter of this suit is subject to the arbitration clause included in their Policies and Procedures, but it contends that its request for injunctive relief is exempted from the arbitration provision, which states: "This provision shall not be construed so as to prohibit either party from obtaining preliminary or permanent injunctive relief in any court of competent jurisdiction." (Id. at 2-3.) Defendants then filed a response to both IML's supplemental brief and to the new motion for injunctive relief. (Docs. 42, 43.) IML did not file a reply to its second motion for injunctive relief before the deadline. Therefore, the pending motions have been fully briefed and are ripe for review.

Because it is dispositive of all current motions, the Court only addresses whether IML's claims for injunctive relief are subject to arbitration and whether Defendants are entitled to attorneys' fees.

## II.  ARBITRATION

### A.  Legal Standard

Under the Federal Arbitration Act (the "FAA"), "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) (citing Rent-A-Ctr., W., Inc. v.

Jackson, 561 U.S. 63, 67 (2010)). Typically, in determining whether an issue is subject to arbitration, the court must determine: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). "If the answer is yes to both questions, the court must enforce the agreement." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (citing Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). However, parties may delegate the threshold question of arbitrability to an arbitrator, rather than a court. Henry Schein, Inc., 139 S. Ct. at 527 ("The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."). The arbitration agreement must "clearly and unmistakably" provide for such delegation. Brennan, 796 F.3d at 1130 (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Henry Schein, Inc., 139 S. Ct. at 528.

Where an issue is subject to arbitration, a court has authority, upon application of one of the parties, to stay the case pending arbitration. 9 U.S.C. § 3. However, where all claims in a suit are barred by an arbitration clause, the court may grant a dismissal. Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014) (citing Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988)).

**B.     Discussion**

Defendants argue that IML's claims should be dismissed because they are self-defeating. (Doc. 17 at 22-23.) Defendants do not concede that they agreed to IML's Policies and Procedures but reason that, to the extent IML has stated valid claims, those claims are subject to arbitration and must be dismissed. (Id. at 6.) IML's claims are premised on the allegation that the Individual Defendants agreed to IML's Policies and Procedures to become IBOs with IML. If the Individual Defendants did in fact agree to IML's Policies

and Procedures, as IML contends, all of IML's claims against the Individual Defendants are subject to mandatory arbitration. When forced to respond to Defendants' argument regarding mandatory arbitration, IML did not contest that the arbitration provision in their Policies and Procedures mandates arbitration of their claims. (See generally Doc. 40.) Therefore, the Court does not make any finding regarding whether the parties agreed to IML's Policies and Procedures and relies on IML's concession that its claims are subject to mandatory arbitration.

IML's only argument against arbitration is that its current requests for injunctive relief are excepted from the arbitration provision. (Id. at 2-3.) This may be true, but it is not a question the Court can decide because IML's Policies and Procedures delegate the question of arbitrability to an arbitrator. IML's arbitration provision provides that any arbitration shall proceed under "the Commercial Rules of the American Arbitration Association" (the "AAA"). (Doc. 40-1 at 16.) Under the AAA rules, the arbitrator has the authority to rule on his own jurisdiction, including the arbitrability of any claim or counterclaim. AAA Commercial Arbitration Rule 7(a). Incorporation of the AAA rules into an arbitration agreement is "clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." Brennan, 796 F.3d at 1130. The Supreme Court recently confirmed, in Henry Schein, Inc. v. Archer & White Sales, Inc., that when an arbitration provision delegates the question of arbitrability to an arbitrator, the question whether a request for injunctive relief is arbitrable must be resolved by the arbitrator, even when the arbitration provision includes language excepting requests for injunctive relief from arbitration. 139 S. Ct. at 529-30. As IML's Policies and Procedures delegate the question of arbitrability to an arbitrator, the Court cannot decide the arbitrability of IML's request for injunctive relief.

Because IML concedes that its claims against the Individual Defendants are subject to arbitration and the Court finds the arbitrability of IML's request for injunctive relief is a question for the arbitrator under IML's Policies and Procedures, the Court concludes that all claims against the Individual Defendants should be dismissed. See Sparling, 864 F.2d

at 638.

That does not resolve the matter. The parties both failed to acknowledge that there is no allegation before the Court that BCFX, who is also a defendant in this matter, signed an arbitration agreement. The Court cannot dismiss the claims against BCFX on these grounds. However, the allegations against BCFX are derivative of IML's claims against the Individual Defendants, such that the Court cannot determine from the complaint what claims, if any, may be independently stated against BCFX. Therefore, the Court will dismiss without prejudice IML's current complaint and provide IML an opportunity to amend its complaint to restate its claims against BCFX alone. See Sparling, 864 F.2d at 638 ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim . . . .") (quoting Wong v. Bell, 642 F.2d 359, 361 (9th Cir. 1981)).

Having dismissed all of the claims before it, the Court finds that IML's requests for injunctive relief are moot.

### III. ATTORNEYS' FEES

Defendants have also requested attorneys' fees on several grounds. First, they argue that IML's Policies and Procedures entitle them to attorneys' fees. (Doc. 16 at 28.) The arbitration provision provides that "[t]he Arbitrator . . . shall award reasonable attorney's fees and costs to the prevailing party." (Doc. 40-1 at 16.) As the Court is not the Arbitrator, it is not authorized to impose attorneys' fees under this provision.

Next, prior to the transfer of this case, IML argued that they were entitled to attorneys' fees under Nevada law. (Doc. 17 at 28-29.) This case was transferred to the District of Arizona under 28 U.S.C. § 1406(a). (Doc. 29.) When a case is transferred under § 1406(a), the law of the transferee district applies. Muldoon v. Tropitone Furniture Co., 1 F.3d 964, 966–67 (9th Cir. 1993) (citing Nelson v. Int'l Paint Co., 716 F.2d 640, 643 (9th Cir. 1983); Manley v. Engram, 755 F.2d 1463, 1467 & n. 10 (11th Cir. 1985)). Therefore, Arizona law applies to Defendants' request for attorneys' fees. In its supplemental brief, Defendants did not renew their request for attorneys' fees under Arizona law. (See

generally Doc. 43.) Therefore, the Court will not award attorneys' fees under state law.

Lastly, Defendants argue the Court should award attorneys' fees because IML acted in bad faith by filing suit in the incorrect jurisdiction, ignoring and violating its own arbitration provision, and further driving up costs by not making its argument that injunctive relief is excepted form the arbitration provision until after the Court ordered supplemental briefing. (Id. at 8-9.) Defendants also point to other cases filed by IML in the District of Nevada against other out-of-state defendants as evidence of IML's intention to use litigation in an inconvenient forum to harass those who criticize or compete with IML. (Doc. 28 at 7-8, 11.)

The general rule in federal courts is that a prevailing litigant cannot recover attorneys' fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). However, "a court may assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 258-59. "An award of attorneys' fees for bad faith is punitive and the penalty can be imposed only in exceptional cases and for dominating reasons of justice." Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir. 1982) (internal quotations omitted) (quoting United States v. Standard Oil Co., 603 F.2d 100, 103 (9th Cir. 1979)).

With the evidence presented here, the Court cannot conclude with confidence that IML has acted in bad faith. Filing suit in an improper venue, even if doing so in several unrelated cases, does not show that a party's underlying claims are frivolous. And while peculiar and frustrating that IML did not respond to Defendants' arbitration argument until being directly ordered to do so by the Court, failing to respond to an argument is not adequate reason to impose sanctions.  Furthermore, IML's argument that its claim for injunctive relief is excepted from the arbitration provision was colorable prior to the Supreme Court's ruling in Henry Schein, Inc. on January 8, 2019, long after this action had begun. See Simply Wireless, Inc. v. T–Mobile US, Inc., 877 F.3d 522 (4th Cir. 2017) (holding that, where arbitration provision delegates arbitrability to arbitrator, court may still decide arbitrability question where argument for arbitrability is wholly groundless),

abrogated by Henry Schein, Inc. 139 S. Ct. 524; Douglas v. Regions Bank, 757 F.3d 460 (5th Cir. 2014) (same); Turi v. Main Street Adoption Servs., LLP, 633 F.3d 496 (6th Cir. 2011) (same); Qualcomm, Inc. v. Nokia Corp., 466 F.3d 1366 (Fed. Cir. 2006) (same). Thus, IML's filing this suit in contradiction to its own arbitration provision was not wholly without justification. Therefore, the Court finds an award of attorneys' fees for bad faith is not appropriate here.

IV.   **CONCLUSION**

Based on the foregoing,

**IT IS HEREBY ORDERED** granting in part Defendant's Countermotion to Dismiss Plaintiff's Amended Complaint (Doc. 17).

**IT IS FURTHER ORDERED** dismissing without prejudice the claims against Ken Ibizugbe, Heather Lopez, and Nate Barnes.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Ken Ibizugbe, Heather Lopez, and Nate Barnes and against IML.

**IT IS FURTHER ORDERED** dismissing without prejudice the claims against BCFX and allowing IML leave to file an amended complaint repleading its claims against BCFX on or before **March 8, 2019**. If IML fails to file an amended complaint by this time, the Court will enter a judgment of dismissal of this action.

**IT IS FURTHER ORDERED** denying as moot IML's Emergency Motion for an Ex Parte Temporary Restraining Order and Preliminary Injunction (Doc. 7), and Motion for Preliminary Injunction and Request for Accelerated Pretrial Conference (Doc. 39).

**Dated** this 21st day of February, 2019.

_____
Honorable Stephen M. McNamee
Senior United States District Judge